UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-20550-CIV-HUCK/O'SULLIVAN

PEDRO PRECIADO RODRIGUEZ,

    Plaintiff,

v.

AKAL SECURITY, INC.,

    Defendant.

_____/

## ORDER

THIS MATTER is before the Court upon Defendant, Akal Security, Inc. ("Akal['s]") Motion for Summary Judgment [D.E. #60]. The Court held a hearing on this matter on January 23, 2013 and has carefully considered the Motion, the record, and applicable law. For the reasons discussed below, Akal's Motion is GRANTED.

### I. FACTUAL BACKGROUND

This case arises from injuries Pedro Preciado Rodriguez ("Rodriguez") sustained while being held at Krome Service Processing Center ("Krome"). The pertinent facts are undisputed. Rodriguez is a Mexican citizen who was deported from the United States and then reentered the United States illegally. He was arrested by Indian River County Sherriff's Office and was eventually detained at Krome.

Krome is a detention center that has three buildings that are divided into living quarters known as PODs. Akal provided security services at Krome pursuant to a contract with Immigration and Naturalization Service ("INS"). The contract required Akal to "provide detainees protection from personal abuse, corporal punishment, personal injury, disease, property damage, and harassment." The contract also required Akal to "exercise good judgment in the application of written rules and regulations and situations not covered in writing" and required Akal's employees to "possess good judgment, courage, [and] alertness[.]"

1

Each POD housed up to sixty detainees and contained a gym where detainees were able to exercise. The gym in the POD where Rodriguez was housed contained a piece of exercise equipment known as a ProMaxima Hip and Dip Combo ("ProMaxima"), which is a stationary apparatus that is stable and does not have any moving parts. The ProMaxima allows users to perform chin-up exercises on one side (the "chin-up side") and hip and dip exercises on the other (the "dip side"). A picture of the ProMaxima is attached hereto as Exhibit A.[1] On the chin-up side are handles, which are ninety-two inches from the ground. The chin-up side also contains small steps fourteen inches from the floor. On the dip side are two padded parallel bars with handles fifty-five inches from the floor. The padded parallel bars allow users to perform hip exercises, and the handles are intended to be used to perform dip exercises.

The intended and proper use of the ProMaxima is obvious. The chin-up side requires a user to place his feet on the steps and then reach up to grab the handles. The user should then step off of the steps and allow his body to dangle and then pull himself up. To perform hip exercises, a user should place his forearms on the padded parallel bars on the dip side. He should then bend his knees so that his feet would not be touching the floor and lift his hips and knees towards the chest and then lower them. To perform dip exercises, a user should hold the handles on the dip side and extend his arms fully and then bend his elbows and allow his body to move towards the floor and lift himself back up to the original position.

On February 18, 2008, Rodriguez was injured while misusing the ProMaxima. Rodriguez had used the equipment prior to the day he was injured. At the time of the injury, the gym was being supervised by two of Akal's employees. There is no dispute as to how Rodriguez was injured because there is a video of the incident which shows Rodriguez walking towards the machine, approaching the dip side. He then hoisted himself on to the padded parallel bars of the dip side such that his feet were on the padded bars where a proper user's arms should be. Rodriguez then continued to climb over the top of the chin-up side. At this point, his entire body was at least ninety-two inches from the floor. The video then shows Rodriguez falling or jumping to the ground. The entire incident, from Rodriguez approach to his fall, lasted approximately six to seven seconds. According to Rodriguez's testimony, he climbed on to the

---

[1] This picture was part of the record in Rodriguez's prior lawsuit brought against the United States of America, case number 12-cv-23412, which by the parties agreement is a part of the record in this case. The picture is located at D.E. #20-10 in that case.

top of the ProMaxima in an effort to use the chin-up side of the ProMaxima. He claims that he was unable to reach up to grab the chin-up handles and, therefore, decided to climb up the dip-side of the ProMaxima so that he could grab the handles. Rodriguez further testified that he had never seen anyone else use the ProMaxima in this way.

The two Akal employees in the gym were behind a desk on the other side of the room when Rodriguez climbed the ProMaxima. Rodriguez claims that one of these employees saw Rodriguez climb the machine, but it is not apparent from the video whether the guard saw Rodriguez make his climb. Rodriguez also asserts that one of these employees yelled "superman" before Rodriguez fell or jumped to the floor.[2]

## II. RODRIGUEZ'S CLAIMS AND AKAL'S MOTION FOR SUMMARY JUDGMENT

Rodriguez's complaint asserts one cause of action for negligence. Rodriguez alleges that Akal should have warned him of the dangers of using the ProMaxima as he did, should have instructed detainees on the proper use of the ProMaxima, and should have supervised him properly.[3]

Akal argues that summary judgment should be granted because Akal did not owe a duty to protect Rodriguez from his injuries because the danger of injury from climbing to the top of the ProMaxima, as Rodriguez did, was not only created by him, it was obvious. As such, Akal argues that Rodriguez had no duty to warn, instruct, or supervise Rodriguez to avoid such an

---

[2] There is some inconsistency between Rodriguez's affidavit and his earlier deposition as to when the Akal employee made the "superman" comment. Rodriguez testified at his deposition that "[w]hen I climbed up there on the machine, I just remember that when I fell from my chair, the guys there who takes (sic) care of us, he just said to me 'Superman,'" which implies that the comment came after Rodriguez fell. In contrast, Rodriguez declared in his affidavit that the comment was made before the fall, such that Rodriguez felt he was being encouraged to jump. Whether the comment came before or after the fall, however, is irrelevant for purposes of resolving the present Motion. The Court will view the issue in the light most favorable to Rodriguez and assume that the comment was made while Rodriguez was still on the apparatus.

[3] Rodriguez also asserts in his complaint that Akal failed to properly train employees and negligently hired employees who were not qualified for their positions. Akal has argued that these theories of liability fail, and Rodriguez has not responded to Akal's argument on these issues. Accordingly, Rodriguez has abandoned these theories of liability. *See Adkins v. Christie*, No. 11-11908, 2012 WL 4901733, at *1 (11th Cir. Oct. 17, 2012) (explaining that when a party fails to respond to a motion for summary judgment on a particular issue, the party has abandoned the issue).

3

injury. Akal further argues that because of the obviousness of the risk of harm from Rodriguez's misuse of the PromMaxima, the injuries sustained were not foreseeable and were not proximately caused by any actions or omissions by Akal.

In opposition to Akal's motion, Rodriguez argues that Akal was obligated to protect Rodriguez from the risk of injury posed by climbing on the machine by reason of a jailer's common law duty to protect prisoners. Additionally, Rodriguez claims that this duty exists by reason of Akal's contract with INS. Finally, Rodriguez argues that even if Akal did not owe Rodriguez a duty to warn or instruct him, Akal employees did owe a duty to stop him once he began his ascent and, furthermore, should not have encouraged him by yelling "superman."

### III. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). On a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party to determine whether that evidence could reasonably result in a ruling in that party's favor. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir.1997).

### IV. ANALYSIS

To prevail on a negligence claim under Florida law, a plaintiff must show: "(1) that the defendant owed a duty of reasonable care to the plaintiff; (2) that the defendant breached that duty; (3) that the breach was the proximate cause of the injury to the plaintiff; and (4) that the plaintiff suffered damages." *Hasenfus v. Secord*, 962 F.2d 1556, 1559-60 (11th Cir. 1992). Only two of these elements are relevant here: duty and proximate cause.

In general, under applicable Florida law, a duty is owed when a "defendant's conduct foreseeably create[s] a broader 'zone of risk' that poses a general threat of harm to others." *See Henderson v. Bowden*, 737 So. 2d 532, 535 (Fla. 1999). It has also been found that a person in custody is owed a common law duty of care. *See Kaisner v. Kolb*, 543 So. 2d 732, 734 (Fla. 1989). A duty of care may also arise from a contractual obligation or by the undertaking of performance of a service. *See Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1186 (Fla. 2003) ("Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service—i.e., the

'undertaker'—thereby assumes a duty to act carefully and to not put others at an undue risk of harm.").

Foreseeability is also relevant to the element of proximate cause. *See Florida Power & Light Co. v. Periera*, 705 So. 2d 1359, 1361 (Fla. 1998). While the duty element asks whether the a defendant created a foreseeable zone of risk, the existence of proximate cause turns on "whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Id.* Duty is a threshold legal question while proximate cause is usually reserved for the fact-finder. *Id.* However, proximate cause may be decided as a matter of law when "the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference." *See McCain v. Florida Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992). In applying the foreseeable zone of risk test, the Court should evaluate "whether the type of negligent act involved in a particular case has so frequently previously resulted in the same type of injury or harm that 'in the field of human experience' the same type of result may be expected again." *Reider v. Dorsey*, 98 So. 3d 1223, 1226 (Fla. 3d DCA 2012).

As to Rodriguez's contention that Akal was under a duty to warn Rodriguez of the dangers associated with climbing to the top of the ProMaxima, the argument fails. Likewise, Akal was under no duty to instruct Rodriguez as to the proper use of the ProMaxima. As a matter of Florida law, there is no duty to warn of an obvious danger. *See Rodriguez v. New Holland N. Am., Inc.*, 767 So. 2d 543, 544 (Fla. 3d DCA 2000). Whether a particular danger is obvious or not is determined by an objective reasonable person standard. *See Byrnes v. Honda Motor Co., Ltd.*, 887 F. Supp. 279, 281 (S.D. Fla. 1994). Here, the obvious danger of falling that arises from climbing to the top of the ProMaxima is apparent to any reasonable individual. In addition, there is nothing inherently dangerous about the ProMaxima. It is simple piece of equipment, is stationary and has no moving parts, and it is clearly understood that climbing atop the machine is not the way the equipment was intended to be used.[4]

On these points, *Siemens Energy & Automation, Inc. v. Medina*, 719 So. 2d 312 (Fla. 3d DCA 1998), is instructive. In *Siemens*, a journeyman electrician was injured after he climbed atop a 9-foot high voltage regulator. *Id.* at 314. One issue on appeal was whether the electrician

---

[4] Rodriguez does not claim that the ProMaxima is a dangerous apparatus, and clearly if it is used properly, it is not.

5

could assert a negligence claim based on the theory that he should have been warned of the danger of falling that existed from climbing atop the regulator. *Id.* at 314-15. The court found that this type of claim is not viable because the risk of falling was an obvious danger such that no duty to warn arose. *Id.* (explaining "there was no duty to warn the plaintiff of the obvious danger of standing on the top of a 9-foot high piece of equipment that was not designed to be used as a work platform and of the possibility of falling off."). The situation presented here is materially similar because, like the plaintiff in *Siemens*, Rodriguez is claiming that he should have been warned of the obvious dangers of climbing atop the ProMaxima and falling (or jumping) off. But *Siemens* teaches that there is no duty to warn of this type of obvious danger.

Another instructive case is *Cassel v. Price*, 396 So. 2d 258 (Fla. 1st DCA 1981). In *Cassel*, an eleven year old child climbed a tree on his school's property. While picking mulberry blooms from the tree, he lost his balance and fell to the ground striking his head on a piece of concrete block and passed away as a result of his injuries. *Id.* at 259. The issue before the court was whether the trial court properly granted summary judgment on the parents' attractive nuisance claim against the school. *Id.* The lower court's ruling was affirmed because the school did not owe any duty to guard against the type of harm that occurred—that is, the risk of a fall that occurs from climbing a tree. *See id.* at 265. Again, the principle is applicable here. As the child in *Cassel*, Rodriguez knowingly climbed to a point where he risked falling, and, as *Cassel* teaches, there is no duty to warn of that risk. *See also John Morrell & Co. v. Royal Caribbean Cruises, Ltd.*, 534 F. Supp. 2d 1345 (S.D. Fla. 2008) (finding that cruise line was under no duty to warn of the obvious danger of a vehicular accident when passenger rode in a dune buggy in traffic); *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237-38 (S.D. Fla. 2006) (finding cruise line owed no duty to warn of obvious danger of snake bite that might occur when passenger went tubing through a rain forest).

Thus, Florida case law demonstrates that Akal owed no duty to Rodriguez to instruct him on the proper use of the ProMaxima or warn him of the dangers of misusing it by climbing on top. The ProMaxima is an exceedingly simple piece of equipment, the purposes of which is obvious. Any serious danger associated with the ProMaxima exists only if it is misused, as here. Moreover, the risk of a fall that exists from climbing on top of a ninety-two inch tall piece of exercise equipment is apparent to any reasonable person. To impose a duty to warn or instruct in

this circumstance would render Akal an insurer of Rodriguez, a result not permitted under Florida law. *See Moulden v. Jefferson Standard Life Ins. Co.*, 2 So. 2d 302, 303 (1941) (explaining that a duty may not be imposed such that the defendant would be made an insurer of the plaintiff).

Nevertheless, Rodriguez relies heavily upon the argument that because of his relationship with Akal—a detainee under Akal's care—he was owed a duty to be protected from his misusing the ProMaxima which created a danger to himself. Rodriguez points out, and the Court agrees, that jailers have a duty to use reasonable care to prevent prisoners from intentionally harming themselves, citing *Hutchinson v. Miller*, 548 So. 2d 883, 885 (Fla. 5th DCA 1989). Rodriguez's reliance on *Hutchinson*, however, is misplaced because the jailers in *Hutchinson* were on notice that the suicide victim was suffering mental anguish. *Id.* However, when a prisoner commits suicide without first giving any warning signs, a jailer is under no duty to take preventative measures. *See Guice v. Enfinger*, 389 So. 2d 270, 271 (Fla. 1st DCA 1980).[5] Again, the ProMaxima is simple piece of equipment, its intended use was obvious, and there was no reason to believe that Rodriguez might misuse the ProMaxima as he did to create a danger for himself.

Rodriguez posits that even if there was no common law duty, there was a duty created by Akal's contractual obligations. By its contract with Krome, Akal agreed to "provide detainees protection from personal abuse, corporal punishment, personal injury, disease, property damage, and harassment." The contract further required that Akal's employees exercise "good judgment" and "alertness," contractual obligations that Rodriguez urges are relevant here. There is no indication, however, that these contractual obligations created greater duties than those imposed by the common law with regard to the duty to warn of obvious dangers such as that presented

---

[5] The court explained:

> Under the circumstances of this case, the deceased's suicide was not sufficiently foreseeable to impose upon the Sheriff's employees the duty to remove the deceased's belt. He had never threatened or attempted suicide in the past, had demonstrated no overt suicidal tendencies, and was expected to bond out the next morning. Under these facts, although the deceased's act of hanging himself was a possible consequence of the failure to remove his belt, it was not a probable consequence and was not foreseeable.

*Guice*, 389 So. 2d at 271. Similarly, here there is no evidence that Rodriguez or anyone else had previously misused the ProMaxima in any way, much less climbing on top of it.

7

here. To interpret the provision such that Akal has a legal duty to protect detainees from personal injury as a covenant to protect detainees from obvious dangers created solely by them would be an unprecedented stretch of the concept of legal duty. Similarly, the contractual provisions requiring Akal employees to exercise good judgment and alertness simply do not create a legal duty in the circumstances presented here. It is clear, then, that Akal's contract with INS did not impose a duty upon Akal to warn Rodriguez of the obvious danger of climbing atop the ProMaxima or instruct him on its proper use.

Additionally, even assuming *arguendo* that Rodriguez could establish that Akal owed a duty to warn or instruct, he cannot establish that these omissions were the proximate cause of his injuries. As discussed above, proximate cause is established when the specific injury is foreseeable by reason of a defendant's conduct. *See Periera*, 705 So. 2d at 1361. Even if it might be foreseeable that some injury could occur as a result of Rodriguez not being instructed as to the proper use of the machine, it is certainly not foreseeable that this specific accident and resulting injury would occur. This is so because Rodriguez's decision to climb atop the equipment is not something that could reasonably be expected or anticipated. Indeed, Florida's proximate cause test, as articulated by the court in *Reider*, asks whether the alleged negligent act involved in this case has so frequently previously resulted in the same type of injury or harm that in the field of human experience the same type of result may be expected again. Here the answer to that question is clearly no. No one could reasonably expect that a failure to instruct Rodriguez how to use simple dip/chin-up apparatus or warn him of obvious dangers associated with its misuse would lead to what happened here.

Rodriguez also argues that Akal was negligent by failing to stop him from climbing atop the ProMaxima after becoming aware that he was doing so. Closely related to this argument is Rodriguez's assertion that one of Akal's employees egged him on by yelling "superman" while Rodriguez climbed the ProMaxima. Even assuming these allegations are true, as the Court is required to do at this stage, Rodriguez cannot establish that this alleged wrongdoing was the proximate cause of his injuries. This point is illustrated by *Ruiz v. Westbrooke Lake Homes, Inc.*, 559 So. 2d 1172 (Fla. 3d DCA 1990). In *Ruiz*, another eleven year old child was playing on monkey bars by running on top of the bars rather than dangling below them. *Id.* at 1173. In an effort to catch his friend, the child jumped from the monkey bars and tried to grab a handle on a


nearby slide but could not get his grip on the handle and fell to the ground suffering injuries. *Id.* The court found that the child could not sustain a negligence action against the owner of the playground because his own volitional act was the sole proximate cause of his injuries. *Id.* at 1174 (explaining that "there is no protection where a person's own volitional act is the sole proximate cause of his injuries."). At bottom, *Ruiz* stands for the rather basic proposition that a person who solely by his own actions creates a dangerous condition and injures himself will not then be permitted to shift the blame elsewhere. The only danger of using the ProMaxima was created by Rodriguez's decision to improperly climb on top of it. Consequently, Rodriguez's act of climbing atop the ProMaxima was the sole proximate cause of the injuries.[6]

## V. CONCLUSION

For the foregoing reasons, Akal's Motion for Summary Judgment [D.E. #60] is GRANTED.

DONE and ORDERED in Chambers, Miami, Florida, February 1, 2013.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of record

---

[6] Although proximate cause is a question that is generally reserved for the fact-finder, this is an instance where the facts support only one reasonable inference. Accordingly, the proximate cause determination is properly resolved at this stage. *See McCain.*, 593 So. 2d at 504 (explaining that proximate cause may be decided as a matter of law when "the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference.").

# EXHIBIT A

